### R. E. PORTER v. W. D. BAGBY *et al.*

1. RES JUDICATA—*Assignment of Judgment.* A plea of *res adjudicata* good against a judgment creditor is good against a party to whom the judgment has been assigned, and who seeks to enforce it against the pleader.

2. CORPORATION — *Stockholders, Action Against.* In a suit by W. against certain stockholders of a corporation to enforce their liability as such, brought by W. in his own name, in the interest of several judgment creditors of the corporation, under a contract with them that he was to have 50 per cent. of the amount collected, one Whetstone was adjudged not to be a stockholder. W. subsequently obtained another judgment against the same corporation and assigned it to Porter, who commenced this action. Whetstone, who was made a defendant in this action, pleaded the former judgment as *res adjudicata.* *Held,* That the plea was good.

*Error from Franklin District Court.*

ALL the material facts are stated in the opinion, filed January 7, 1893.

*F. A. Waddle,* for plaintiff in error:

Whetstone is unquestionably liable as a stockholder of the Pomona Creamery Company. It is well settled that one who assists in organizing a corporation, and signs such an agreement, is held to all the liabilities and has all the privileges

of a stockholder. Thomp. Liab. St., § 105; *Winston v. Brooks*, 129 Ill. 64; *Sawyer v. Hoag*, 17 Wall. 610; *Nulton v. Clayton*, 54 Iowa, 425 (37 Am. Rep. 213); *Hawley v. Upton*, 102 U. S. 314; *Ross v. Gold Hill Bank*, 19 Pac. Rep. 243; *Jackson v. Traer*, 64 Iowa, 469; *Foundry Co. v. Killian*, 99 N. C. 501 (6 Am. Rep. 539); *Thompson v. Savings Bank*, 19 Nev. 103 (3 Am. Rep. 797, and note on p. 829); 1 Mor. Corp., § 56; Boone, Corp., §§ 108, 110; *Henry v. Railroad Co.*, 17 Ohio, 187; *Noble v. Callender*, 20 Ohio St. 199; *Anderson v. Railroad Co.*, 12 Ind. 376; *Whittesey v. Frantz*, 74 N. Y. 456; *Insurance Co. v. Floyd*, 74 Mo. 286; *Mining Co. v. Adams*, 35 Kas. 193; *Topeka Mfg. Co. v. Hale*, 39 id. 23; *Milling Co. v. Ropes*, 9 Pick. 187; *The State v. Smith*, 48 Vt. 266.

As to the estoppel of the judgment in the case of *Waddle v. Altman et al.*, we claim that that judgment is in no sense an estoppel, because the plaintiff in that case was the mere agent or trustee of the creditors for whom the suit was brought, and they had nothing to do with the creditors in this suit. Authorities are abundant to show that a judgment only estops a party in the capacity in which he sues, *i. e.*, there must be "identity of quality" in the persons. *A. T. & S. F. Rld. Co. v. Comm'rs of Jefferson Co.*, 12 Kas. 135. See, also, Bates, Pleading, p. 6, and cases cited; Wells, Res. Adj., §§ 21, 22; Freem. Judg., § 156 (3d ed.); *Eshelman v. Shuman*, 13 Pa. St. 561; *Building Association v. Chalmers*, 75 Cal. 332; *Wright v. De Groff*, 14 Mich. 164; *Rathbone v. Hooney*, 58 N. Y. 463, and cases cited.

*C. A. Smart*, for defendant in error Whetstone:

Whetstone is not liable as a stockholder. He never was a stockholder. True, he signed the contract with Hall & Co. for other parties, and all persons connected with the organization of the corporation understood that he was not signing said contract for himself. It is the intention of the party that the court will endeavor to find. *Nutton v. Clayton*, 54 La. 125. As to what is necessary to create a liability, see

60 Am. Dec. 49; 28 Mut. 152; 63 Pa. St. 279; 90 id. 271; Beach, Corp., § 63; Mor. Corp. (2d ed.), § 49; 80 N. Y. 219; 105 Ill. 578, 585.

Opinion by SIMPSON, C.: On the 15th day of August, 1888, F. A. Waddle recovered a judgment before W. W. Warren, a justice of the peace of Franklin county, against the Pomona Creamery Company, for the sum of $260.17, and $6.25 costs. On the 3d day of November following, said judgment was duly assigned to the plaintiff in error, R. E. Porter, who commenced this action to enforce payment of said judgment against certain stockholders of the creamery company, that being a corporation organized under the laws of this state. John H. Whetstone, one of the corporators and one of the defendants, filed an answer in which it was alleged —

"That in a certain action pending in this court, wherein the said F. A. Waddle was plaintiff and [he] Whetstone was a defendant, it was, by the judgment of this court, on April 22, 1887, duly and solemnly adjudged and determined that this defendant was not a stockholder in the said corporation known as the Pomona Creamery Company; all of which at full length appears by reference to said judgment in said cause, found on page 444, journal 'G' of the records of this court, hereby made a part of this pleading. The defendant Whetstone avers that said judgment is a full, complete and final adjudication of all and singular the issues in this cause between himself and the plaintiff."

The reply was a general denial. At the trial the court made special findings of fact, and stated certain conclusions of law, as follows:

### "FINDINGS OF FACT.

"1. On October 24, 1883, the several defendants in this action, together with several other citizens of this county, signed a written contract or proposition with John W. Hall & Co., of Iowa, whereby said Hall & Co. proposed to erect and put in operation a creamery at Pomona, of a certain capacity, and said subscribers agreed to pay therefor the sums set opposite their names; and when $5,800 should be subscribed the creamery to be erected in 120 days thereafter,

and the subscribers then to incorporate under the laws of Kansas, fixing the capital stock at $6,800, to be divided into 136 shares of $50 each, Hall & Co. to have $5,800 in money for the creamery, and 20 shares of stock therein, to be issued to them for superintending the work. Said writing further provided, that 'in the articles of incorporation and in the by-laws thereof no assessment shall be made upon the stockholders for the indebtedness of the same, except to pay Hall & Co., as above specified. Neither shall the private property of said stockholders be liable for such subsequent indebtedness.' It was further provided in said writing, 'that after said organization is completed, and said amount paid to Hall & Co., said corporation shall issue stock to each of the above-mentioned subscribers to the amount of his subcription hereto annexed; also issue 20 shares of stock to said Hall & Co., as full payment for superintending the manufacturing and marketing of the butter above mentioned.' The defendants subscribed said paper as follows:

| Names. | P. O. address. | Amount subscribed. |
|---|---|---|
| L. Altman | Ottawa | $100 |
| J. Patton | Pomona | 100 |
| E. A. Rice | Ransomville | 300 |
| J. H. Scoville | Pomona | 100 |
| A. H. Sellers | " | 100 |
| Philip Bledsoe | " | 100 |
| Morg. Wickham | " | 200 |
| J. J. Whetstone | " | 200 |
| J. H. Whetstone, per orders | " | 750 |

"The paper was similarly subscribed by several others who are not made parties.

"2. In pursuance of said contract and proposition, John W. Hall & Co. erected and put in operation said creamery about March 1, 1884, and about the same time said subscriptions were collected, to the amount of $5,800, and paid over to Hall & Co., except $250, which was never collected, being part of the $750 so subscribed by J. H. Whetstone, 'per orders,' which is hereafter again referred to.

"3. On January 1, 1884, 10 of said subscribers executed and acknowledged a charter for said 'Pomona Creamery Company,' and caused the same to be filed in the office of the secretary of state, as provided by law, whereby they undertook to, and did, become incorporated by said name under the laws of Kansas, as contemplated in said contract or proposition referred to in the first finding; a copy of said charter, marked 'A,' is attached to the answer herein.

"4. After the filing of said charter certificates of stock

were duly issued to said defendants and other subscribers thereto, as provided in said original contract, for the amounts so subscribed, except said J. H. Whetstone, which were duly paid in full by said defendants, and, thereupon, they became and were stockholders therein, holding paid-up stock for the amounts specified in their subscriptions, as stated in the first finding, and have ever since continued to and still do hold said stock.

"5. The subscription of J. H. Whetstone for $750 was made by him and understood by the other subscribers to be for other parties, and afterward $500 of said amount was taken and stock therefor issued to C. W. and O. L. Parkinson; but the balance thereof, to wit, $250, was never taken by anyone, and never issued.

"6. Regular books were kept, showing the transactions of said corporation, and its board of directors, and the names of its stockholders and amounts of stock held. The corporation engaged in the business named in its charter and proposed in said original agreement, and continued therein from the spring of 1884 down to October 1, 1885, when it suspended business, and since that time has failed to resume its usual and ordinary business, and had wholly suspended business for more than one year prior to the commencement of this action.

"7. One week prior to June 1, 1885, the secretary of said corporation, by order of its president, and as provided by the by-laws, gave to each stockholder therein, including the defendants, a notice of a special meeting to be held at the creamery office, in Pomona, on June 1, 1885, for the purpose of changing the articles of incorporation. This notice was given by mail to each stockholder, by posting in three public places in Franklin county, and by advertisement in the Pomona *Enterprise*, a newspaper published at Pomona, and was in conformity to a by-law of the corporation providing for special meetings and the notice therefor. Stockholders were present and acting at such meeting representing 79 shares of the capital stock. None of these defendants were present at such meeting. Prior to the call for the meeting, the 20 shares issued to Hall & Co. had been surrendered to the corporation and canceled, and the certificates burned. This was done in pursuance to a resolution of the stockholders at a stockholders' meeting, authorizing any holders of stock to so surrender the same and have it canceled. The stock outstanding, excluding said Hall stock, on June 1, 1885, was $5,350.

"8. At such special meeting of June 1, 1885, it was voted to adopt the second or amended charter, which had been executed May 18, 1885, by six of the original corporators, and thereupon it was duly filed with the secretary of state. A copy of this amended charter is attached to the answer herein, marked 'B.' This was adopted in pursuance to the advice of counsel, for the reasons specified in the preamble thereto, and was intended as an amended charter for the same corporation, and was not intended to be the charter of a new corporation. The corporation continued to transact the same business, with the same property, using the same books and records, under the direction of the same officers, and with the same objects and purposes, and pursuing the same methods as before. On the day such amended charter was adopted, it was voted to execute a mortgage upon the creamery to certain stockholders to secure them for liabilities assumed as indorsers of the corporation paper, which mortgage was accordingly executed, and afterward foreclosed in this court.

"9. The defendants Patton, Scoville, Wickham and J. J. Whetstone traded with said corporation, delivered milk at the creamery and accepted checks therefor drawn by its treasurer after the change in said charter had been made, but none of the defendants had any actual knowledge of said change after it had been made until this suit was brought.

"10. In the month of January, 1886, the several judgment creditors mentioned in the petition duly recovered judgments before a justice of the peace of this county for the several sums, with costs, specified in the petition, whereof abstracts were duly filed and judgments docketed thereon in this court, as provided by law, and as alleged in the petition. Afterwards, and on August 16, 1886, said judgments were, by the judgment creditors therein, severally duly assigned in writing, absolute in form, to the plaintiff. Cotemporaneous with such written assignments, it was agreed between the plaintiff (who is an attorney at law of this court) that he should proceed to collect said judgments in his own name, and when collected pay to said several judgment creditors 50 per cent. of the amount collected on each judgment, they, the judgment creditors, then advancing to plaintiff $30 as indemnity against costs. All the claims upon which said judgments were rendered accrued after said amended charter was adopted and filed.

"11. There is now due to the plaintiff, on the several judg-

27—50 KAS.

ments so assigned to him, the sum of $477.25, debt, and $329.95, costs accrued upon said judgments, amounting, all together, to the sum of $807.20.

"12. None of the defendants have paid into the corporation, or for its use, anything more than the amount of their said stock subscriptions. Said J. J. Whetstone has, however, purchased several open accounts against the corporation, and holds the same by assignment, amounting to the sum of $110. He has, also, since the commencement of this action, had assigned to him a judgment against the corporation for $200, rendered in the foreclosure suit upon the mortgage referred to in the eighth finding. The corporation also owes the defendants, Scoville, $15, and Morg. Wickham, $24, balances due for milk furnished by them since June 1, 1885."

### "CONCLUSIONS OF LAW.

"1. The plaintiff may maintain this action, as he has undertaken to do, and that the defense of champerty cannot be sustained.

"2. That the corporation as organized under said charter 'A' is the same corporation afterward continuing business under charter 'B,' the last-named charter being an amendment merely of the former, and the liability of the stockholders remains the same.

"3. That by the provisions of § 40 of the act concerning private corporations, as amended in 1883, the said corporation must be deemed dissolved at the commencement of this action, for the purpose of enabling creditors to enforce the individual liability of stockholders therein.

"4. That the several defendants named below are liable herein to an amount equal to the capital stock held by them respectively, to wit:

| | |
|---|---:|
| L. Altman, to the amount of | $100 |
| J. F. Patton, to the amount of | 100 |
| E. A. Rice, to the amount of | 300 |
| J. H. Scoville, to the amount of | 100 |
| A. H. Sellers, to the amount of | 100 |
| P. Bledsoe, to the amount of | 100 |
| Morg. Wickham. to the amount of | 200 |
| J. J. Whetstone, to the amount of | 200 |

and that the defendant, J. H. Whetstone, is not liable.

"5. The plaintiff is entitled to judgment for said sum of $807.20, due upon said judgments. The said several defendants to be released upon paying the amount of their respective liability, and when sufficient is paid to satisfy amount so due

the plaintiff, with interest from this date, and costs of this action, the judgment will be released.

The settled rule is, that Porter, as assignee of the judgment, could have no greater rights in and was as much subject to all the defenses that might or could be made against it, as Waddle, the assignor. He succeeded to whatever rights Waddle had in the judgment by virtue of an assignment of it, and hence is a privy. If the plea of *res adjudicata* was good against Waddle, the judgment creditor, it is good against Porter, the assignee of the judgment creditor. The judgment that is pleaded as *res adjudicata* was rendered in an action brought by Waddle against various stockholders of the Pomona Creamery Company, including John H. Whetstone, on judgments in which he had an interest of 50 per cent. He was therefore a real party in interest, and for that reason could maintain an action in his own name to enforce the stockholders' liability to pay these judgments. So far as we know, or so far as the record discloses, the judgment on which this action is based was his personal property before he assigned it. He brought the suit in which it was rendered in his own name, and nothing is disclosed that would warrant an inference that he acted in any representative capacity. We think, therefore, that these are the same parties, and that there is identity of quality in the parties; that is to say, we think that Waddle, in both cases, sued in the same right; that he was a real party in interest in both cases, so far as the record of each case discloses.

In the first suit Waddle represented creditors to the extent of 50 per cent. of the value of judgments sought to be enforced by it. But he also represented a personal interest of his own to the extent of 50 per cent. of the amount of the judgments sued on. If he was a mere nominal party, the real ones he represented could not bring a second action against Whetstone; but he was more than nominal: he was one of the real parties in the litigation. We think the plea of *res adjudicata* was good, and that the trial court was right. The case of *Executors of Tate v. Hunter*, 3 Strobh. Eq. 139, so largely

quoted from in the second chapter of Wells, strongly supports the decision below.

We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.