(27 App. Div. 80.)

CASSIDY v. UHLMANN.

(Supreme Court, Appellate Division, First Department. March 11, 1898.)

1. BANK DIRECTORS—RELATIONS WITH DEPOSITORS.
    The relation of a director of a bank to the depositors is confidential and fiduciary.

2. SAME—FRAUD—LIABILITY TO DEPOSITORS.
    At a critical period in the affairs of a bank, two of its directors, of whom defendant was one, who were in practical control during the absence of the president, actively participated, with full knowledge that the bank was hopelessly insolvent, in keeping it open for business, without notifying subsequent depositors of the facts. Held, that defendant was guilty of fraud, and was liable for the damage thus inflicted upon subsequent depositors.

3. SAME—EVIDENCE.
    In an action brought to charge a director of a bank with individual liability on the ground of fraud, in which it was necessary to prove both that the bank was insolvent on a certain date, and that he knew it, testimony as to the withdrawal of more than $250,000 by certain depositors was objected to, as not being connected with the director or his knowledge. Held competent, as part of the res gestæ.

Appeal from trial term, New York county.

Action by Martin Cassidy against Frederick Uhlmann and others. From a judgment on a verdict, and from an order denying a new trial, defendant Uhlmann appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

William A. Jenner, for appellant.
Harold Nathan, for respondent.

O'BRIEN, J. The action is brought by the assignee of four depositors of the Madison Square Bank, against the president and two of its directors, to recover damages for the fraud perpetrated by them

in connection with the receipt of deposits from said depositors for the bank shortly before its failure, and at a time when, it is alleged, the bank was known by these defendants to be hopelessly insolvent. The deposits were made on August 7 and 8, and the bank was closed on August 9, 1893, by the bank examiner.

The rule of law as enunciated by the court in its charge to the jury was, in effect, that a bank director who actively participated in keeping the bank open for the receipt of deposits when he knows of the bank's insolvency is party to a fraud upon the depositors, and renders himself liable personally for the damages sustained by persons making deposits in reliance upon the bank's supposed solvency. Although this rule has been applied with respect to the liability of directors in other states, we do not find that the precise question has been determined in this state. In Delano v. Case, 17 Ill. App. 531, a decision by the Illinois appellate court, after discussing what was the exact status of directors, and holding that they were not merely agents, but were as well trustees for the bank, the stockholders, and the depositors, it was said:

"If they knew that the bank was insolvent, or if their suspicions were aroused, and they recklessly closed their eyes, and made no effort to discover the truth, it was their duty not to receive the money of depositors ignorant of the true state of affairs."

The appellant insists, however, that the relation between the corporation and its directors is that of principal and agent, and that the extent of their powers and obligations as a board in this case is not material; that they are required to exercise only that degree of care which may reasonably be expected of unpaid agents assuming the management of a business, and exercising their powers through salaried officers, and according to the reasonable requirements of the situation; that it is doubtful if the rule requires a standard of diligence as high as that which a man would exercise in the conduct of his own affairs, because, it is claimed, in his own affairs he may supervise and control every one, but each director is not required to supervise everything. He may rely on his associates and the officers, until suspicion is aroused and greater vigilance is required. According to this rule, directors are required to exercise only ordinary skill, care, and diligence in the performance of their duties, and are not liable for errors or mistakes of judgment. This reasoning, however, would not be controlling upon the rule of law applicable to the theory upon which the complaint is framed or the liability of the defendant predicated. It was not sought to charge the defendant merely because he was a director, and, as such, should have known of the condition of the bank, and prevented its holding itself out as solvent when in fact it was insolvent; but the complaint was framed upon the theory that the defendant was guilty of fraud, in that, with actual knowledge of the bank's insolvent condition, he was instrumental, in concert with the president and one McDonald, another director, in afterwards keeping it open. Such action, it is insisted, was a fraud upon the depositors who thereafter deposited their money, and who are therefore entitled to have him respond for the damage thus inflicted upon them.

In 17 Am. & Eng. Enc. Law, 115, it is said:

"The directors or officers of a corporation who make false statements of material facts, misrepresentations as to solvency, and the like, the natural tendency of which is to deceive the public, are liable for the damages sustained by one who relies on such statements, and is misled and suffers damage in consequence. The mere fact of being a director and stockholder will not make one liable for the frauds and misrepresentations of the active managers of the corporation. Some knowledge and participation in the act complained of as being fraudulent must be brought home to the person charged. It is only where a director lends his name and influence to promote a fraud, or is guilty of some violation of law, or some other mismanagement, that he is personally liable."

It is not claimed here that there was any direct misrepresentation; but the fraud is based upon the concealment of the insolvent condition of the bank, a suppression of the truth from the depositors, and a participation in the conduct observed in the management of the bank after actual knowledge of its insolvency. We do not think there will be any dispute over the proposition that the concealment of a fact, or the suppression of a truth which one ought as a legal duty to disclose, is, in law, the equivalent of a fraudulent misrepresentation. The question therefore is as to whether, when a director knows that the bank is insolvent, he owes a legal duty to the depositors to disclose that fact, or prevent the bank from continuing thereafter to receive deposits. This would to some extent depend upon what was the true relation of a director to a depositor and the consequent legal duty. If, as contended by the appellant, there was no fiduciary or quasi trust relation involved, then there would be force in the argument that a director was not bound to disclose the fact of insolvency. We do not, however, assent to this, but think that the relation of a director to the depositors is a confidential and fiduciary one, and that the director, in the discharge of his legal duty, must not withhold his knowledge of the bank's insolvency from the depositors. By this we do not mean to say that this obligation rests upon the director under every possible set of circumstances, because we recognize the rule laid down in Railway Co. v. Johnston, 27 Fed. 246, wherein it is said:

"If the officers of the bank supposed the institution would be able to maintain its credit, and thus surmount its difficulties, they were under no legal duty to the plaintiff to disclose the state of its affairs. Silence with regard to a material fact, which there is no legal duty to divulge, will not vitiate a contract, although it eventually operates to the injury of the party from whom the fact is concealed. It is well settled that fraud cannot be imputed to a party who contracts an obligation, knowing himself to be insolvent, merely because he omits to disclose the fact to the other contracting party."

This is but another way of formulating the rule stated in Morse, Banks, § 589, that:

"Even though, knowing its insolvency, there is no reason to require the officers to disclose the state of affairs to the depositor, they may have reasonable hopes of recovery."

In this case, however, the evidence was directed to showing that the defendant knew that the bank was hopelessly insolvent on Saturday, the 5th of August; the testimony tending to show that, there being a scarcity of cash, the defendant's attention was called to this fact on August 2d, and, having reached the bank, he started an in-

vestigation, receiving in that connection the assistance of the cashier; and on the 5th, according to the testimony of the latter, the appellant, Uhlmann, after such examination on the morning of that day, said, "The surplus is gone; now the capital begins to walk off," and finally exclaimed, "By Gosh! the bank is busted!" It was made to appear then that the defendant Uhlmann's attention and that of the other director, McDonald, was called to the critical condition of the bank as early as August 2d, and that the president having left the city on Thursday, and not returning until the following Monday, the investigation was continued by these two directors, with the assistance, it would appear, of their counsel, whom they brought in at that critical juncture with a view of determining what course, if any, could stop the impending crisis in the bank's affairs. The suggestion that $100,000 in cash should be supplied by certain of the directors was talked over; and while, if this amount had been supplied, it might have enabled the bank, by paying the present demands, to have continued a short time longer, there is evidence from which it could be inferred that even this would not have put the bank back into a solvent condition. Moreover, it appears that the impropriety of receiving deposits was discussed, and the plan finally adopted to take them; that, as to such depositors as might owe the bank nothing, they should not be put among the bank's assets or into the books of the bank, but that a slip should be given; and that, in the event of the bank's being unable to continue, the money should be returned. It is suggested that the defendant Uhlmann was opposed to receiving deposits, and one of the witnesses said that he protested against that action. If so, it was a proper matter to be considered, together with the other evidence, by the jury. The attention of the court in charging the jury, however, was not called to it; and it is now, after judgment, too late to insist that the court did not present that aspect of the evidence.

The theory upon which the defendant's liability was predicated was the fact that, if a bank remains open for business, it constitutes a continual representation of solvency, and that those directors who, knowing that the bank is insolvent, participate in keeping it open, take part in the making of a false and fraudulent representation to the depositors, and in the fraudulent suppression of information which they are in duty bound to make known, and that, if injury comes from such unlawful acts, the law surely affords a remedy. This was also the theory adopted by the learned trial judge, and it will be noticed from the statement of the five grounds upon which the defendant in the case at bar based his motion to dismiss that it was not contended below that there was no evidence that the defendant, knowing that the bank was insolvent, actively participated in keeping it open. Neither did the appellant take the broad ground which is now urged upon this appeal, that he could not be held personally liable by a depositor for his conduct as director of the bank, or that the fraud committed was a fraud of the corporation for which he could not be held personally answerable.

As was said in Sterrett v. Bank, 122 N. Y. 659, 25 N. E. 913:

"We shall not, however, enter upon a discussion of this question, because it was not raised at the trial, and is not before us. If the learned counsel for the defendant intended to raise it at the circuit, he should, in fairness to the court and to the counsel for the plaintiff, have said something about it, so that his position could have been understood. If he did not intend to raise it there, he should not be allowed to take advantage of it here."

Without applying this rule, however, which makes for fairness in trials, and conceding as an abstract proposition that the assumption of a directorship does not make one a guarantor of the affairs of the bank, and that, whatever a director's duties, they are to be discharged in board meeting in a reasonably prudent way, this would not militate against the binding force of this judgment, which was not based upon the principle of a director's ordinary liability where he has not been active or taken part in the act complained of, but was based upon an active participation by the defendant Uhlmann and his co-director, McDonald, who, at a concededly critical period in the bank's affairs, in the absence of the president, and without the sanction of the board of directors, permitted it to adopt a course of action which resulted in injury to those thereafter depositing; for we do not think it can be seriously contended but that there was evidence in the case from which the jury might have inferred that these two, with the president, Blaut, were the only persons having any control over the conduct of the bank during the week preceding its failure. Our conclusion upon this branch of the subject, therefore, is that the propositions of law as affecting the defendants' liability were as favorably stated as they had a right to expect.

It is contended that the court erred in permitting the cashier to testify respecting the withdrawal of $250,000 by the state treasurer and certain moneys by the East River Bridge Company and the Glen Ridge Quarry Company; the ground being that, as these came through the exchanges on August 9th, they had no bearing upon the question of Uhlmann's knowledge of the condition of the bank on the 7th and 8th, and that it had not been shown that Uhlmann was in any way connected with the withdrawal of the moneys by said checks. We think that this testimony was competent as part of the res gestæ, as bearing upon the question of the bank's condition at the time these deposits were withdrawn.

Nor do we think it was error to exclude evidence as to what the bank examiner said to Mr. Uhlmann on August 7th, because the latter had no right to rely on such statements, and was responsible for the knowledge which he derived in the investigation of the bank, and which nothing that the bank examiner might have told him could affect. For the reason, also, that his liability was based upon the knowledge which he derived from personal investigation, it was proper to exclude testimony as to what Mr. Uhlmann believed was on the subject of deposits being taken on Monday (there being evidence from which it could be inferred that he knew they were receiving deposits), or as to his belief in regard to the condition of the surplus and liabilities on Tuesday night.

Equally untenable is the assignment of error in refusing to allow the defendant to put in evidence from the directors' minute book the report of the president of the January preceding, because, however

flattering such a report might be, it could have little or no weight, as it was not claimed that Uhlmann relied upon it; but he insisted on making an investigation for himself, in connection with the cashier, from statements furnished him a few days before the bank failed. Nor do we think it was error to permit the introduction of the books of the bank, or to allow the cashier to testify as to loans made on the security of the bank stock, because upon the question of insolvency it was entirely proper to show the condition of the bank. The refusal to allow Mr. Putney to testify as to whether he heard Mr. Uhlmann say on Friday, Saturday, or Monday evening that the bank was "busted" was right, for the reasons stated by the court,—that the testimony of the witness who heard Mr. Uhlmann say it was that it was said at an interview between himself and Uhlmann, when Mr. Putney was not present.

We have examined the other exceptions taken to rulings upon evidence, and also to the charge of the court, but none, other than those which we have referred to, require special mention, and none of them are of sufficient force to affect a judgment which was entered after a trial in which all the legal rights of the defendants were carefully guarded and protected by the court.

The judgment should be affirmed, with costs.    All concur.