(101 App. Div. 388.)

### NATHAN v. UHLMANN et al.

(Supreme Court, Appellate Division, First Department. February 10, 1905.)

1. ASSIGNMENTS—ACTIONS—PARTIES—EVIDENCE—JUDGMENTS—RES INTER ALIOS ACTA.

   A judgment recovered by plaintiff's intestate against defendants, directors of an insolvent bank, on certain assigned claims of depositors for deposits alleged to have been received by defendants with knowledge of the bank's insolvency, was inadmissible in a subsequent action by intestate against the same defendants on similar assigned claims of other depositors.

2. SAME—WITNESSES—CROSS-EXAMINATION.

   Where, in an action against the directors of an insolvent bank on claims for deposits claimed to have been received by them with knowledge of the bank's insolvency, it was shown that on one of the days when defendant U. was at the bank, and its then condition was under consideration, he had a conversation with witness, a bank examiner, in which the latter stated that the impairment of the bank's capital was to the extent of $70,000 or $80,000, which left, after payment of debts, an amount for distribution among stockholders, and it appeared that subsequent to the appointment of receivers, witness, on a more thorough examination, found the deficiency to be over $371,000, and the details of such examination and the copy of the statement of assets and liabilities being introduced in evidence, the refusal of the court to permit the witness to be asked on cross-examination how he could explain the discrepancy between the two statements made within a few days of each other was not an abuse of the trial court's discretion.

3. SAME—LIABILITY OF DIRECTORS—FRAUD.

In an action against bank directors to recover deposits alleged to have been received with knowledge of the bank's insolvency, an instruction that plaintiff could not recover unless the jury found that defendant was guilty of bad faith "amounting to fraud," and its refusal to charge that it was a fraud for the officers of the bank to permit a deposit when they knew that the bank was insolvent, was error.

Appeal from Trial Term, New York County.

Action by Harold Nathan, as administrator of the estate of Martin Cassidy, deceased, against Frederick Uhlmann and others. From a judgment in favor of defendants, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Harold Nathan, for appellant.

William A. Jenner, for respondents.

O'BRIEN, J. This action was brought by the plaintiff's intestate, as assignee of five depositors in the Madison Square Bank, to recover for losses sustained by such depositors in consequence of the defendants receiving money on deposit at a time when such defendants knew the bank to be insolvent. The material facts appearing in the record were before this court upon a former appeal from a judgment against the defendants entered upon a verdict of a jury. Cassidy v. Uhlmann, 27 App. Div. 80, 50 N. Y. Supp. 318. We affirmed the judgment, but the Court of Appeals ordered a reversal (Cassidy v. Uhlmann, 163 N. Y. 380, 57 N. E. 620, 79 Am. St. Rep. 596) upon the ground that there was error in excluding the testimony of the defendant Uhlmann as to his belief in the solvency of the bank. That was the only ground of the reversal. It is not necessary, therefore, to discuss anything on this appeal, except some special features of the case as now presented.

In addition to the case cited, we have a kindred one in Cassidy v. Uhlmann, 54 App. Div. 205, 66 N. Y. Supp. 670, affirmed 170 N. Y. 505, 63 N. E. 554, instructive on the general question of liability of defendants in actions of this character. The last trial resulted in a verdict in favor of the defendants, and from the judgment so entered the plaintiff appeals. He contends, among other things, that the court erred in excluding as evidence the judgment in Cassidy v. Uhlmann, 54 App. Div. 205, 66 N. Y. Supp. 670, it being insisted by him that it was admissible, at least as proof of the fact that the defendants knew of the insolvency of the bank when the deposits were received. We do not think that this contention can be upheld, for the parties are not the same. They are actually different, and the judgment sought to be introduced is res inter alios acta. Here Cassidy (and now his administrator) is endeavoring to enforce the claims of depositors, but they are other and different depositors from those whose rights Cassidy sought to enforce in the other action. Each is an independent party, with an independent claim. As assignee, Cassidy had no other or different right than his individual assignors could enforce had they personally brought the action; and if we escape the confusion arising from the fact that in both actions the assignee of separate and distinct depositors is the same person, namely, Martin Cassidy, it will at once be apparent

that the ruling of the trial judge was right. We are not referred to any authority which holds in substance or in principle, or from which it can be deduced, that a judgment obtained by a depositor in one action is competent evidence against the same defendant in another action, brought by another and different depositor. The exclusion, therefore, of the judgment, does not constitute ground for reversal.

The second error assigned by the appellant is the exclusion of evidence sought to be elicited by a question put by the plaintiff on cross-examination of the bank examiner, Judson. It was shown that on one of the days when the defendant Uhlmann was at the bank, and its then condition was under consideration, he had a conversation with Judson, in which the latter stated that the impairment of the capital of the bank was to the extent of $70,000 or $80,000, which would have left, after payment of debts, an amount for distribution among stockholders. It appeared, however, that subsequent to the appointment of receivers this same bank examiner, upon a more thorough examination, found the deficiency to be over $371,000. The details of such examination and a copy of the statement of the assets and liabilities of the bank as then found by him were introduced in evidence. The question was asked of Judson how he could explain the discrepancy between the statement which he had made to defendant Uhlmann a few days before the bank closed its doors and his statement of its condition upon subsequent examination. To the exclusion of the question the plaintiff excepted.

There would be force in the suggestion that this evidence was competent as bearing at least upon the credibility of the witness, but we assume the rule is settled that to some extent the scope permissible on cross-examination upon collateral matter for the purpose of affecting the credibility of a witness is within the control of the trial judge. The question presented upon the trial was the condition of the bank and the knowledge which the defendant Uhlmann had thereof up to the time it closed its doors; and all that appeared thereafter, because not affecting his liability, was immaterial and irrelevant, except as suggested. Thus the condition of the bank as subsequently found by Judson would be immaterial, because it could not in any way have any bearing upon the defendant's liability, and much less could any explanation which Judson might make of the discrepancy in the two statements be regarded as material upon that point. It was dangerous evidence, and it might well have tended to confuse the jury by the suggestion that the hopelessly insolvent condition of the bank as found after had some bearing upon the defendants' knowledge or belief before it closed its doors. We do not think, in view of the tendency of such evidence to mislead the jury, and the discretion which the court could exercise in accepting or rejecting evidence upon credibility, that the ruling excluding the question would justify our reversing the judgment.

We think, however, that the judgment cannot stand because of errors in the charge with respect to certain principles of law applicable to the case and embraced in requests presented by the plaintiff and refused by the court. The charge as at first made was not, strictly speaking, erroneous; but it failed clearly and distinctly to state the propositions of

law which plaintiff was entitled to have charged. In the main charge the court said, among other things:

"This case is founded upon a claim that the defendant acted fraudulently towards the depositors; that is, he disregarded a duty which he owed them of using good faith in view of the knowledge he possessed and of such power as he had in the direction of the bank's affairs. * * * The acceptance of deposits in bad faith toward the depositors by an insolvent bank is in law a fraud for which those participating * * * should be held answerable. * * * The plaintiff's case depends upon your finding * * * that he believed the bank to be insolvent, and that he either participated in the taking of deposits with bad faith, or that he failed to take such steps to protect the depositors as good faith would require. * * * The defendant has disclaimed any intention hostile to the interests of the depositors. * * * Whether he omitted something which he should have done, and whether it is justly to be inferred that he acted in bad faith, * * * you are to determine. * * * You are to endeavor to find what was the motive, the intent, or state of mind of the defendant with regard to the interests of the depositors. * * * Your finding of the defendant's bad faith or dishonest intention in the matter * * * must not be a matter of mere surmise or conjecture. * * * If you conclude * * * in favor of the claim that the defendant knew or fully believed the bank to be insolvent, and that he personally was chargeable with bad faith toward the depositors, * * * your verdict will be in plaintiff's favor."

The plaintiff requested the court to charge, "It is a fraud for the officers of a bank to permit a deposit when they know that the bank is insolvent," which request was refused, the plaintiff excepting. Other requests, similar in substance, were made and refused, exceptions being taken, and then the plaintiff made the following request: "If the Madison Square Bank was insolvent on August 7 and 8, 1893, and the defendant had knowledge of such insolvency, and with such knowledge took part in directing the receipt of deposits by the bank, the plaintiff is entitled to recover." This also was refused, "except as charged," and plaintiff excepted. The jury were thus left to conclude that, whatever the acts of the defendant were, to make him liable they must find that he was animated by bad faith. And in this connection it is significant that the jury first returned a verdict "in favor of the plaintiff for the full amount asked, exonerating the defendant from intention to defraud." The court refused to accept the verdict and instructed the jury again that they could find for the plaintiff only providing they found "the defendant was guilty of bad faith amounting to fraud, * * * because if you exonerate the defendant from bad faith amounting to fraud, then the plaintiff is not entitled to recover." The plaintiff excepted, and requested the charge that "if the defendant, prior to the receipt of these deposits, knew that the Madison Square Bank was insolvent, and with such knowledge took part in keeping the bank open, or in directing the receipt of deposits with intent that the deposits should be received, the plaintiff is entitled to recover." This also was refused, "except as charged," the plaintiff excepting; and thereafter the jury returned a verdict for the defendant. Numerous other requests were made and refused, exceptions being taken by the plaintiff, but they present practically the same question—as to whether the court erred in instructing the jury that they must find actual, intentional, and deliberate bad faith

in order to entitle plaintiff to a verdict.　As said in 14 A. & E. Ency. Law (2d Ed.) 104:

"To render a false representation fraudulent, and the person making the same liable, it is not at all necessary that there shall have been any actual dishonesty of motive or intention. As far as the mental attitude of the party is concerned, all that is necessary is to show that he knew the representation was false, or to show facts from which such knowledge may be implied, and that he intended it should be acted upon by the person injured."

The rule is thus stated in Coleman v. Wolcott, 1 Conn. 285:

"When the effect of an act done is necessarily injurious to the rights of another, the quo animo is not a matter of fact. It is settled and becomes an inference of law."

And in this state it was held (headnote):

"A banker who is to his own knowledge hopelessly insolvent cannot honestly continue his business and receive the money of his customers, and, although having no actual intent to cheat and defraud a particular customer, he will be held to have intended the inevitable consequences of his act." Anonymous, 67 N. Y. 598.

See, also, Foster v. Charles, 6 Bing. 396.

In Boyd's Executors v. Browne, 6 Pa. 310, the court said:

"The motives by which he was actuated do not enter into the inquiry. If he makes representations productive of loss to another, knowing such representations to be false, he is responsible as for a fraudulent deceit."

The rule thus applicable was stated by this court upon the former appeal in this action (Cassidy v. Uhlmann, 27 App. Div. 80, 50 N. Y. Supp. 318) as follows (headnote):

"The relation of a director of a bank to its depositors is a confidential and fiduciary one; and a director who, having ascertained  *  *  *  by personal investigation that his bank is hopelessly insolvent, participates in keeping the bank open for the receipt of deposits,  *  *  *  in effect represents to the public during that period that it is solvent, commits a breach of his legal duty, and becomes personally liable to one who during such time makes deposits therein."

This rule was also referred to in the kindred case of Cassidy v. Uhlmann, 54 App. Div. 205, 66 N. Y. Supp. 670, and was approved upon appeal to the Court of Appeals, 170 N. Y. 505, 63 N. E. 554.

Irrespective, therefore, of any intentional wrong or bad faith, the defendants, if the jury found that they had knowledge that the bank was insolvent, and participated thereafter in the receipt of deposits, were, as matter of law, guilty of fraud, and liable for the loss sustained thereby. This rule the plaintiff was entitled to have charged to the jury as requested, and for the error in refusing to so charge we think the judgment must be reversed, and a new trial granted.

Judgment and order accordingly reversed, and new trial granted, with costs to the appellant to abide the event. All concur.