**TILLMAN v. NATIONAL CITY BANK OF NEW YORK.**

No. 132.

Circuit Court of Appeals, Second Circuit.

April 4, 1941.

Borris M. Komar, of New York City (David L. Sprung, Borris M. Komar, and Archer Eisenstat, all of New York City, of counsel), for plaintiff-appellant.

Shearman & Sterling, of New York City (Joseph M. Proskauer, J. Alvin Van Bergh, and Eugene Eisenmann, all of New York City, of counsel), for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

One Sewell, plaintiff's ultimate assignor, on June 23, 1917, deposited 150,000 roubles at the branch banking office of·the defendant National City Bank of New York, in Petrograd, Russia, which the defendant promised to repay at such times and in such amounts as Sewell might demand, with interest thereon at 3% per annum. On June 14, 1932, Sewell assigned his interest in the account, as well as all claims against the defendant, to G. Frank Dougherty. On October 19, 1936, Dougherty assigned his interest in the account and all claims arising therefrom to the plaintiff James A. Tillman. On July 1, 1937, Tillman brought this action against the City Bank to recover the balance of the account in United States currency. The complaint alleged a demand made by Sewell on the defendant at its home office in New York City on December 8, 1931.

Defendant's answer set up a discharge of its obligation to the plaintiff (1) because of the terms of its Russian charter, (2) because of confiscatory decrees of the Soviet Republic, (3) because the roubles credited to Sewell's account had no value at the time payment was demanded, (4) because plaintiff's causes of action were barred by the statute of limitations.

The action was tried before Judge Goddard and a jury. At the close of the trial the judge sustained the defenses set forth

in the answer, dismissed the complaint on the merits and directed a verdict for the defendant. From the judgment entered for the defendant the plaintiff has appealed. The defendant-appellee not only relies on the grounds adopted by the District Court in dismissing the complaint, but also argues that the adjudication of the New York Supreme Court in Dougherty v. National City Bank, 157 Misc. 849, 285 N.Y.S. 491, where Dougherty sought to recover upon four claims similar to the one before us here, constituted an estoppel by judgment which bars plaintiff's recovery.

We think the judgment for the defendant was right and should be affirmed. Irrespective of other considerations this must be held because of the estoppel arising from the judgments of the New York Supreme Court dismissing the complaints in certain actions by Dougherty against The National City Bank. The findings of the referee, Harrison Tweed, Esq., upon which the judgment we shall especially mention was based, established that one of Dougherty's assignors, the Countess Maria Apraxin, deposited 100,000 roubles in the Petrograd branch of The National City Bank which the latter became obliged to pay at that branch on demand with 3% interest. At the time when that action was tried and the judgment therein was entered, on June 12, 1936, Dougherty held by assignment under date of June 14, 1932, the claim which he assigned to Tillman on October 19, 1936, on which the present action was brought.

The issues in Dougherty's former action were substantially identical with those here. The findings by the referee especially pertinent to the action before us are set forth below. [1]

It appears from these findings and the conclusions of law held to follow from them that the deposits in defendant's branches were not converted into continuing deposits payable in New York on account of the closing of the Russian branches which were found both in the New York actions and in the case at bar to close on September 1, 1918. Accordingly, the New York statute of limitations, Civil Practice Act N.Y. § 48, barred claims sued upon more than six years after the closing.

It likewise appears that the rouble in which the deposits were made was worthless and the depositors and their assignees and sub-assignees were not entitled to be paid in an entirely different form of currency, circulating by the name of rouble

[1] 37. Defendant never agreed to repay the deposit of Countess Maria Apraxin in dollars, or in any other non-Russian currency.

38. Defendant made no agreement, either express, implied in fact, or implied under Russian law, to assume a deposit relationship with Countess Maria Apraxin or any of her assignees or sub-assignees outside of Russia.

39. Defendant made no agreement, either express, implied in fact, or implied under Russian law, which ever created a deposit relationship between Countess Maria Apraxin or any of her assignees or sub-assignees, and the home office of defendant in New York.

50. On May 12, 1920, the Soviet Government enacted a decree which provided that all deposit accounts in the names of governmental, public and private institutions which functioned during the pre-revolutionary period and which no longer existed, as well as deposits and accounts of private parties, opened prior to January 1, 1918 and in connection with which there had been no entries during the years 1918 and 1919, should be written off to the Revenue of the State Treasury.

51. On August 15, 1921, the Soviet Government published a circular of instruction to its officials, which referred to the decrees for liquidation of foreign banks and stated that since all the terms and dates for the winding up of the liquidation had long expired and since the liquidation was in fact completed, the Government deemed it necessary to immediately stop the further carrying on of liquidation activities and to dissolve the liquidation committees.

52. The Soviet Government appropriated to itself the rights and claims of former depositors in the defendant's Russian branches, including the rights and claims of the Countess Maria Apraxin; and the aforesaid rights and claims were terminated under Soviet law.

53. Under Soviet law, the rights and claims of plaintiff's assignors against defendant or its Russian branches were terminated, and no cause of action of any kind against defendant or its Russian branches exists under Soviet law.

72. By 1920, the rouble had depreciated to such an extent that one rouble had little if any value.

93. The claim of Countess Maria Apraxin against the defendant, based upon her deposit in defendant's Petrograd branch, is and was in 1932 wholly worthless.

under laws of the Soviet Republic enacted after the defendant's branches were closed; at least this is so where no demand for payment was made prior to closing and the obligations had been discharged by governmental acts.

■ There can be no doubt that by the judgment entered on the report of Referee Tweed, Dougherty would have been barred from relitigating the issues determined in that action in a new suit for recovery of the claim assigned to him by Sewell. He held that claim during the entire course of the former litigation and his situation closely resembles that of the owner of one of a series of bonds who has sued to recover upon it after having had his claim dismissed in an action upon another bond of the same series in which the facts relied on are equivalent. Under such circumstances he would be met by the estoppel of the first judgment. The so-called estoppel is no mere technicality but a reasonable measure calculated to save individuals and courts from the waste and burden of relitigating old issues. Eissing Chemical Co. v. People's Nat. Bank of Brooklyn, 205 App.Div. 89, 91, 199 N.Y.S. 342, affirmed 237 N.Y. 532, 143 N.E. 731; Sargent & Co. v. New Haven Steamboat Co., 65 Conn. 116, 126, 31 A. 543; Bennett v. Commissioner, 5 Cir., 113 F.2d 837, 839, 130 A.L.R. 369. Tillman, to whom Dougherty assigned the claim in suit, stands in the same situation as Dougherty himself.

It may be argued that if Dougherty had brought the present action he would not have been precluded by the former judgment because the claims would have been derived from different assignors. But all the claims, however derived, were for payment of roubles deposited with the same bank during the same period, the parties would have been the same and the issues on which their rights depended would have been identical. No good purpose could be served by relitigating such issues.

The plaintiff's counsel cites Nathan v. Uhlmann, 101 App.Div. 388, 92 N.Y.S. 13, as showing that the judgment upon the report of Referee Tweed in Dougherty v. National City Bank, 157 Misc. 849, 285 N.Y.S. 491, cannot be used as an estoppel because the claims on which Dougherty there sued and the claim upon which the present action is brought were derived from different original assignors. In Nathan v. Uhlmann, supra, it appeared that one, Cassidy, as assignee of various de-

positors, had recovered a judgment against directors of a bank for receiving money on deposit when they knew the bank was insolvent. Cassidy v. Uhlmann, 170 N.Y. 505, 63 N.E. 554. The court excluded this judgment at the trial in the Nathan action where Cassidy's administrator sought to enforce the claim of a creditor which Cassidy had acquired by assignment prior to the original suit. In Nathan v. Uhlmann, supra, Justice O'Brien remarked at page 390 of 101 App.Div., at page 15 of 92 N.Y. S., that the court had not been referred to any authority indicating "that a judgment obtained by a depositor in one action is competent evidence against the same defendant in another action, brought by another and different depositor". In saying this he was only stating a settled rule of law, but he went farther and said that an assignee who had succeeded in recovering upon certain claims in one action could not avail himself of the judgment by way of estoppel in another action in respect to identical issues, where the several claims were derived from different original assignees. What the court stated regarding estoppel by judgment was dictum, for though the prior judgment was said to have been properly excluded as evidence the verdict in favor of the defendant was set aside and a new trial was granted for errors having no relation to the exclusion of the judgment. The defendant took an appeal and gave the necessary stipulation for judgment absolute in favor of the plaintiff in the event of affirmance. The New York Court of Appeals affirmed the order of reversal without opinion and ordered judgment absolute against the defendant on the stipulation. 184 N.Y. 606, 77 N.E. 1192. It is apparent from the foregoing not only that Justice O'Brien's remarks about the effect of the prior judgment were not necessary to the result reached but also that the decision of the Court of Appeals in no sense determined its effect. Indeed on the record that court might have regarded the exclusion of the judgment as error, for it was in favor of the plaintiff, and the final decision entered on the stipulation was to the same effect.

The Kansas Supreme Court in Porter v. Bagby, 50 Kan. 412, 31 P. 1058, held a judgment admissible by way of estoppel in a case like the present. In Bonney v. Von Novelly, 164 N.Y.S. 42, the same result was reached under similar circumstances by the Appellate Term of the Supreme Court.

■ There is no merit in defendant's contention that the prior judgment cannot be used as an estoppel because certain facts on which it rested were stipulated. The stipulation was that "the Russian branches of the National City Bank were officially closed, and under orders of the American Consul General all the nationals left for America by way of Finland and Sweden". Those facts were borne out by testimony uncontradicted in the present case. But irrespective of this, findings even if dependent upon the stipulation were as binding as though reached after testimony or established in any other way. Tait v. Western Md. Ry. Co., 289 U.S. 620, 626, 53 S.Ct. 706, 77 L.Ed. 1405; Crouse v. McVickar, 207 N.Y. 213, 217, 100 N.E. 697, 45 L.R.A.,N.S., 1159.

■ The appellant's objection to the prior judgment on the ground that it was not pleaded as required by Rule 8(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, was not made at the trial. When the judgment was admitted in evidence it was only objected to on the ground that "it would not be res adjudicata and it would not work as an estoppel", and not because it had not been pleaded (Record p. 52). No claim of surprise was made and there was ample opportunity to discuss its effect as a piece of evidence. Any neglect to plead the estoppel as a defense was harmless and at worst was a failure to comply with a technicality which did not affect the substantial rights of the parties. This seems especially true if it is remembered that an estoppel to dispute facts established by judgment did not have to be pleaded prior to the new rules. Southern Pacific Railroad Co. v. United States, 168 U.S. 1, 59, 60, 18 S.Ct. 18, 42 L. Ed. 355; Krekeler v. Ritter, 62 N.Y. 372. The right to plead a judgment as evidence of particular matters can hardly be regarded as an affirmative defense going to the cause of action. We regard it as unlikely that the new rules impose a rigorous kind of pleading not heretofore required.

Even if we assumed that there was no estoppel by reason of the findings in the prior judgment which would defeat the plaintiff, nevertheless recovery was properly denied for the other reasons given by the trial judge.

## The New York Statute of Limitations.

■ The statute of limitations was held a bar both by Judge Goddard in the court below and by Referee Tweed in the decision already discussed. This result was in accordance with various decisions of the New York courts. Whether a cause of action arose because of the frustration of the deposit contract through the closing of the Petrograd branch, or through breach of that contract, or because of a rescission in either case a demand was unnecessary to give rise to the cause of action. Sokoloff v. National City Bank, 250 N.Y. 69, 80, 164 N.E. 745; Richard v. National City Bank, 231 App.Div. 559, 248 N.Y.S. 113. Hence the statute had run long before the present suit was brought. Parker v. Hoppe, 257 N.Y. 333, 340, 342, 178 N.E. 550, 80 A.L.R. 1359; Dougherty v. National City Bank, supra.

## The roubles were without value.

■ We shall not review the decisions of the New York courts or of this court in Tillman v. Russo Asiatic Bank, 2 Cir., 51 F.2d 1023, 80 A.L.R. 1368, certiorari denied 285 U.S. 539, 52 S.Ct. 312, 76 L.Ed. 932, that the roubles such as the defendant contracted to pay were no equivalent for the other currencies of the same name. The courts have held that the decrees under which the later currencies were issued made no provision for paying the old obligations in the new currency, rouble for rouble, and that the old roubles in any exchange for current roubles were valueless. Dougherty v. Equitable Life Assur. Society, 266 N.Y. 71, 193 N.E. 897; L. C. Smith & Bros. Typewriter Co. v. Credit Lyonnais, 266 N.Y. 126, 194 N.E. 57; Klochkov v. Petrogradski M. C. Bank, 266 N.Y. 596, 195 N.E. 216; Dougherty v. National City Bank, 157 Misc. 849, 285 N.Y. S. 491.

## The claim was discharged by the Russian decrees and acts.

This has been held in many decisions. Dougherty v. Equitable Life Assurance Society, 266 N.Y. 71, 193 N.E. 897; Dougherty v. National City Bank, 157 Misc. 849, 285 N.Y.S. 491; United States v. Belmont, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134; Zimmermann v. Sutherland, 274 U.S. 253, 255, 47 S.Ct. 625, 71 L.Ed. 1034. We agree with Mr. Tweed that any failure of the defendant's officials to transfer the accounts to the People's Bank after the officials had been driven from Russia did not impair the force of the decrees. We have no reason to suppose that any right to resort to the defendant's New York office for payment

of the plaintiff's claim survived the involuntary novation which under the Russian law substituted a government agency as debtor for the defendant.

*Exclusion of expert testimony.*

The admission of further expert testimony would have only involved a long battle between experts as to the law of a nation under which our system of judicial precedent does not exist and where decrees and regulations are controlling. The experts would be engaged in analyzing written instruments, the proper interpretation of which the court must finally determine. How far this was to be permitted in reason was within the fair discretion of the trial court. The questions of the expert that were excluded were usually of the most vague and general kind calculated to elicit answers tending broadly to sustain the plaintiff's claims. We think the questions excluded were either bad in form or related to matters clear enough from the documentary proof to be dealt with by the court without expert aid.

*Questions for the jury.*

In view of the conclusions of law and of foreign law by the court below, with which we are in accord, there remained no question for the jury.

Judgment for defendant affirmed.