Price, J.
We have made the foregoing extended statement of this case because of the importance of the questions involved and the necessity for a consideration of all the material facts, in order to reach a proper judgment.
The bill of exceptions is brief in its statement of such facts which the evidence tends to prove, and contains the special charges requested by the plaintiff and the general charge to the jury. It is not in dispute that the plaintiff in error relied wholly on the report made by the bank through its cashier, Child, to the comptroller of the currency on the twenty-fourth of December, 1897, attested by three of its directors, Reason B. Pritchard, James K. Frew and John McVieker. He purchased the ten shares of stock on the fifteenth day of January, 1898. The report referred to was published in the Lisbon Journal on the third day of January of that year. The bank was in fact insolvent on and ever since December 15,1897, but the defendants were ignorant of that fact. The evidence also tends to prove that John McVieker and James K. Frew, directors, signed said report without any examination, at the time, of the books of the bank as to its correctness; that an examination by a competent bookkeeper at *286 that time, would have shown the total amount due individual depositors to he $68,902.65, and an examination of the entries in the journal as to certificates of deposit paid, with the ledger of the hank as to “certificate deposit accounts” would have shown quite a number of false entries made by the absconding cashier, between April 11, 1891, and October 29, 1897, making a total of false entries in the ledger of $31,117.25, to the debtor side of the certificate deposit account. So that the cashier, or, some one for him, during the period mentioned frequently manipulated the books, and especially the ledger accounts, at various times producing false entries of the condition of the bank, both as to its resources and liabilities. There is no evidence tending to prove that either of the attesting directors had any knowledge of these false entries, or that anything had previously occurred to their knowledge to excite their suspicion or distrust of the cashier. There is no evidence tending to show that either of them was a competent bookkeeper, and we therefore assume that neither of them was a competent bookkeeper. There is no evidence tending to prove that the directors received any salary or compensation, and we assume that they served without compensation. In short, it seems, as may be the fact in most cases, the directors had implicit confidence in the cashier, who made up the bank’s report to the comptroller, and did not examine the books so as to test its accuracy. And if they had examined the books in order to have discovered the false entries as finally found, their investigation of the preceding year would not have been sufficient, but it must have included each year back to 1890. The bill of exceptions recites in substance, that an examination by a competent book *287 keeper would have shown these false entries and the true condition of the bank. We suppose that a competent bookkeeper is one who is qualified by education and experience to examine and compare the various books kept by the bank, and trace the bearing of one entry upon another in the different books. No doubt that where a cashier turns to be dishonest, it is within his power to purposely complicate his accounts, and thus thwart all ordinary efforts to ascertain the truth from the books. False entries seem to have been the bane in this case. In the presence of these facts how shall the attesting directors be judged? By their attestations did they vouch for the absolute truthfulness of the statements in the report? Or, are they held merely by the rule of ordinary care — care commensurate with the business entrusted to them and the duties properly encumbent upon them?
The plaintiff contends for the former standard, as found in his request appearing in our statement of the casé. The trial court declined to charge that proposition, and this is one of the errors assigned. In its stead the court in paragraph 4 of the general charge, said to the jury: “It must appear by a preponderance of-the evidence, that at the time of the attesting and publication of said report, that the directors so attesting this report, or who assented to and directed the publication of the same, did so knowing the report to’ be false, of, under such circumstances as will warrant the jury in finding by a preponderance of the evidence, that such directors, by the exercise of ordinary care and prudence would have known that said report was false in some one or more of the particulars set forth in the petition. ’ ’
*288 The court further charged: “Inasmuch as there has been a large amount of testimony introduced tending to show the manner in which the affairs of said bank were conducted for many years prior to its dissolution, and inasmuch as a great deal has been said by counsel in argument as to the manner in which the directors of said institution attended to its affairs, I feel it my duty to say to you, at the outset, that this is an action for deceit based on the publication of said report as set out in the petition, and the question for you to determine is not whether the directors were generally negligent in the performance of their duties as directors, but whether or not the report in question was false, and whether or not the defendants or any one of them knew the same to be false, or would have known the same to be false, had they given such attention to their duties as the law requires under the instructions I shall hereafter give you * * V’
The same standard of liability is repeated in later portions of the charge in applying the law to the facts of the case. The plaintiff was not satisfied with the charge and excepted.
The plaintiff, as we have seen, submitted his theory by the request to charge, and we have the different theory of the court in the above instructions. Which of the two is correct?
Section 5211, Revised Statutes of the United States, requires the reports of national banks, such as the one under consideration. It provides that “every banking association shall make to the comptroller of the currency not less than five reports during each year, according to the form which may be prescribed by him, verified by the oath or affirmation of the president or cashier of such association *289 and attested by the signature of at least three of the directors. Such report shall exhibit in detail and under appropriate heads, the resources and liabilities of the association at the close of business on any past day specified by him, and shall be transmitted to the comptroller within five days after the receipt of a request or requisition therefor from him, and in the same form in which it is made to the comptroller it shall be published in a newspaper published in the place where such association is established * # * J J
Section 5146 prescribes the qualifications of directors: (1) Every director must, during his whole term of service, be a citizen of the United States, and at least three-fourths of the directors must have resided in the state, territory or district in which the association is located, for at least one year immediately preceding their election, and must be residents therein during their continuance in office. (2) Every director must own in his own right, at least ten shares of the capital stock of the association. A director who ceases to be the owner of ten .shares or otherwise becomes disqualified shall thereby vacate his place.
By section 5147, each director, when appointed or elected, shall take an oath that he will, so far as the duty devolves on him, diligently and honestly administer the affairs of the association, and will not knowingly violate or willingly permit to be violated, any of the provisions of this title, and that he is the owner in good faith and in his own right of the number of shares of stock required, et cet.
Having the qualifications named in section 5146, and taking the oath prescribed in section 5147, the directors entered upon the discharge of their duties. *290 They were not required to he bookkeepers, or to possess the expert or technical knowledge of bookkeeping usually adopted by the executive officers of such associations. When they attested the bank’s report they did it as the act of ordinary men, or men of common and ordinary intelligence. This report had two purposes: primarily to inform the comptroller of the condition of the bank as to resources and liabilities; and its publication is for the information of the stockholders and the general public. There were no personal representations made to the plaintiff. As one of the public, he read the report and relied upon it in purchasing his stock and was deceived. His action is grounded upon the deceit thus practiced upon him as a member of the public.
As to the liability of the bank and its directors, section 5239, Revised Statutes of the United States, provides: “If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents or servants of the association to violate any of the provisions of this title, all the rights, privileges and franchises of the association shall be thereby forfeited * * *, and in cases of such violation, every director who participated in or assented to the same, shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation. ’ ’
We have in this section the statutory standard of liability, and it relates to every director who “participated in or assented to” the violations of the provisions of the title of which said section forms a part. If he did not participate in or assent to such violation, this statute fixes no individual or personal *291 liability against him. In this case there was no evidence tending to prove that the defendants participated in, or assented to any violation of the banking statute except such participation or assent as may be ascribed to the attestation of the bank’s report, and it would seem, that such an act will not be sufficient to establish the participation and assent contemplated and penalized by the statute. Participating and assenting both' imply affirmative action of some sort, as distinguished from mere silence and inaction. This statute does not preclude a liability at common law.
If we leave the statute just considered, and look to the common law liability of directors, we find that actions for damages against them founded on a published false report of the bank, which they attested, are actions for deceit, and they are controlled by the law governing actions of that character. This doctrine is laid down in numerous cases, some of which are cited later in this opinion. Pomeroy in his second volume on equity jurisprudence, section 884, states the rule as follows: “It is now a settled doctrine of the law that there can be no fraud, misrepresentation or concealment without some moral delinquency; there is no actual fraud, legal fraud, which is not also a moral fraud. This immoral element consists in the necessary guilty knowledge and consequent intent to deceive — sometimes designated by the technical term, scienter. The very essence of the legal conception is the fraudulent intention flowing from the guilty knowledge. No misrepresentation is fraudulent at law, unless it is made with actual knowledge of its falsity, or under such circumstances that the law must necessarily impute such knowledge to the party at the time he makes it. ’ ’ *292 The author then proceeds to illustrate his proposition, which we think fairly represents the text writers on the subject of fraud and deceit.
Diligent counsel have cited many adjudicated cases on the subject, to some of which we add others found in our own research. Briggs v. Spaulding, 141 U. S. (Rep. ed.), 132, is a leading case decided by a court frequently called upon to interpret the laws governing national banking associations. To economize space we omit the facts stated in that case, and sunimarize the principles it determines.
It is there decided that directors of a national bank are not insurers of the fidelity of its agents whom they have appointed, and are not responsible for losses resulting from the' wrongful act or omission of other directors or agents, unless the loss is a consequence of their own neglect of duty; they must exercise ordinary care and prudence — such degree of care as ordinarily prudent and diligent men would exercise; knowledge of all the affairs of a bank, or what its books and papers would show, cannot be imputed to a director for the. purpose of charging him with liability.
It is true, as said by counsel, that the decision was made by a divided court, but it is the opinion of the majority, and that majority, as in all such cases, declares the law. But the dissenting opinion is not in conflict with the rule we here adopt. The case has wide support in the decisions of the courts of last resort in many states, some of which we will notice.
Kountze et al. v. Kenneday, 147 N. Y., 124, was an action to recover damages for fraud and deceit alleged to have been practiced by Kenneday, by which plaintiff claimed to have been induced to *293 purchase certain stock and bonds of the Howe Machine Company, a corporation. Two of the prevailing principles of the case appear to be,— (1) That in an action for deceit, the misrepresentation upon which an action is based must be shown not only to have been false and material, but it must be also shown that the defendant, when he made it, knew that it was false, or not knowing whether it was true or false, and not caring what the fact might be, made it recklessly, paying no heed to the injury which might ensue. (2) The written statement of the president of the corporation as to its entire assets and liabilities, and the fact that he furnished the statement as a statement of the entire assets and liabilities, were not of themselves sufficient to warrant the inference that he represented that the statement was true of his own knowledge.
In Sperring’s Appeal, 71 Pa. St., 11, it is held that directors in a stock corporation, as to the stockholders, are not technical trustees, but are as mandatories, and are bound to apply no more than ordinary skill and diligence. The court, through Sharswood, J., reviews many cases and discusses the relation and liability of directors at length. Decided in 1872. The same court, in Swentzel et al. v. Penn Bank et al., decided in 1892, 23 Atl. Rep., 405, cites with approval Sperring’s Appeal, supra, and holds that “a director of a bank, whose services are gratuitous, and whose duties are to attend the bank once or twice a week' to assist in discounting paper, to see how much money there is to loan, and once or twice a year, to count the cash on hand and examine the bills receivable and securities to see whether they correspond with the statement furnished by the officers, does not owe the creditors of the bank such care as a reason *294 ably- prudent man exercises in his own business, but is amenable only for fraud, or for such gross negligence as amounts to fraud. ’ ’
In the opinion of Paxton, G. J., on page 414, it is said: “Negligence is the want of ordinary care according to the circumstances, and the circumstances are everything in considering this question. The ordinary care of a business man in his own affairs is one thing, and the ordinary care of a gratuitous mandatory is quite another matter. The one implies an oversight and knowledge of every detail of his business; the other suggests such care only as a man can give, in a short space of time, to the business of other persons from whom he receives no compensation.” The entire opinion is very pertinent to the controversy in the case at bar.
See also Cowley v. Smyth, 46 N. J. L., 380; Wallace v. Lincoln Savings Bank (Tenn.) 15 S. W. Rep., 448; and Clews et al. v. Bardon, 36 Fed. Rep., 617.
Utley v. Hill et al., (Mo.) 55 S. W. Rep., 1091, was an action by a. depositor in a state bank against the directors to recover money lost by failure of the bank. By the statute of that state, such banks were required to make periodical reports to the secretary of state, and the depositor claimed he was induced to make his deposit by reason of the representations consisting of the reports made to the secretary of state. The court laid down the rule recognized in the above cases.
In Warfield v. Clark, (Ia.) 91 N. W. Rep., 833-4, it is held that in an action against the secretary of an insurance company for deceit consisting of false representations contained in its official statement, an instruction that defendant was charged with knowledge of the true condition of the company, and *295 if the statement filed by him was not correct, it was untrue and false, and so known to. he by the defendant, was erroneous, since the action could he maintained only on proof of active, conscious and intentional fraud.
See also Warner v. Penoyer, 82 Fed. Rep., 181. That case was reviewed on appeal by the United States Circuit Court of Appeals, as found in volume 61 of United States Appeals at page 372 et seq.
On page 379, the court say, “Before they (bank directors) can he made responsible for losses which have occurred through the mismanagement or dishonesty of the cashier, it must appear that such losses resulted as a consequence of the omission of some duty on their part. If in all probability these would have resulted just the same, notwithstanding they had been ordinarily diligent and vigilant, there is no justice in shifting them upon the directors, and no principle' of law to justify it. They are responsible for their own acts and omissions, hut not for those of co-directors in which they have not actively or passively participated. ’ ’ See first paragraph of the syllabus of the case. .
There are many other cases of like import for which we have no space in this opinion.
We do not overlook the fact that they are in conflict with some other causes; notably Gerner v. Mosher, 58 Neb., 135, where it is held that “The attestation of hank reports by the directors is a positive statement that the condition of the hank is as represented therein, and such directors are personally liable for injuries sustained by false representations of the solvency of the bank contained , in the report, even though they were unaware that such report and representations were false or untrue, *296 and their attestation was made without intention to defraud. ” That decision was made February 23,1899, and by a'divided court, — Irvine and Ryan dissenting from the proposition quoted, but concurring in other points decided. The case seems to be in conflict with the judgment of the same court rendered on February 9th of the same year, in Stuart v. Bank of Staplehurst, 78 N. W. Rep., 298.
The case of Gerner v. Mosher, supra, has some support in Solomon v. Bates, (N. C.) 24 S. E. Rep., 478, and Hauser v. Tate, 85 N. C., 81; also in Tate v. Bates, 118 N. C., 287. But we think those cases are extremely harsh, and not in accord with the great weight of authority which establishes a doctrine more consonant with sound reason and the methods commonly adopted and practiced by prudent and careful men in the business affairs of everyday life.
The directors of a bank are surely authorized to appoint a cashier, conferring upon him the powers usually exercised in such an office. He is properly confided in as to the custody of its money, securities, books and valuable papers, and the supervision of its books and accounts. While is is true, that the directors cannot divest themselves of the duty of general supervision and control, they may properly intrust to him the powers usually appertaining to the direct management of the business, and where they have acted in good faith and with ordinary diligence in their general supervision, they are not liable for losses resulting through secret peculations and secret false entries of the cashier. Their position does not require them to devote themselves to the details of the business, which may be left to the clerks and bookkeepers under the supervision of the cashier. They are not required to look with suspicion upon *297 the conduct of these agents or employes, nor to practice a system of espionage over the cashier or his subordinates, without apparent reason, and they have a right to assume they are honest and faithful, where no circumstances transpire to excite doubt or suspicion.
On the other hand,- they cannot excuse their indifference or negligence by pleading mere honesty of intention.
We believe this a fair summary of the law as deduced from the weightier cases and the opinions of text-writers.
In harmony with the authorities as we approve them, the trial court instructed the jury in the present case with commendable clearness, and properly applied this law to the facts before the jury. It then was a question of fact for the jury to determine whether, under the rules submitted for its guidance, the defendants should be held liable. The verdict was for the defendants. The judgment rendered on the verdict was affirmed by the circuit court, and we are content with that judgment.

Judgment affirmed.

Davis, C. J., Shauck, Crew, Summers and Spear, JJ., concur.