MARTIN CASSIDY, Respondent, *v.* FREDERICK UHLMANN, Appellant, Impleaded with Others.

WITNESS — ADMISSIBILITY IN EVIDENCE OF BELIEF. A director of a bank, sought to be personally charged with a liability for deposits received by it, immediately before its failure, upon the ground that he fraudulently suppressed the truth as to its insolvency and participated in keeping the bank open, may testify to his belief as to the responsibility of the bank at the time the deposits were received, since, while the general rule is that the operation of the mind of a witness may not be given in evidence, yet where he is charged with knowingly participating in a transaction the character of which depends upon the intent with which it is done, his belief in regard to it is admissible; and although there may be abundant evidence showing that he could not have entertained any such belief, this will not justify the rejection of the evidence.

*Cassidy* v. *Uhlmann*, 27 App. Div. 80, reversed.

(Argued May 4, 1900; decided June 12, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 22, 1898, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William A. Jenner* and *Oscar W. Jeffery* for appellant. The trial court erred in refusing to allow defendant Uhlmann to testify as to his belief in respect of deposits being taken on Monday, and as to his belief up to Tuesday night, August eighth, with regard to the ability of the bank to pay liabilities. (*McKown* v. *Hunter*, 30 N. Y. 625 ; *Rosen* v. *Stein*, 54 Hun, 179 ; *McCormack* v. *Perry*, 47 Hun, 71 ; *Seymour* v. *Wilson*, 14 N. Y. 567 ; *Forbes* v. *Waller*, 25 N. Y. 430 ; *Bedell* v. *Chase*, 34 N. Y. 386 ; *D. C. M. Ins. Co.* v. *Hachfield*, 73 N. Y. 226 ; *Sperry* v. *Baldwin*, 46 Hun, 120 ; *Durfee* v. *Bump*, 20 N. Y. S. R. 833.)

*Harold Nathan* for respondent. The trial court did not err in refusing to allow defendant Uhlmann to testify as to

his belief in respect of deposits being taken on Monday and as to his belief with regard to the ability of the bank to pay liabilities. (*Preston* v. *Southwick*, 115 N. Y. 139; *Dillon* v. *Anderson*, 43 N. Y. 231; *Bayliss* v. *Cockcroft*, 81 N. Y. 363; *Brown* v. *Champlin*, 66 N. Y. 214; *V. Nat. Bank* v. *Newton*, 25 App. Div. 62; *Tolman* v. *King*, 24 Hun, 480.)

PARKER, Ch. J.    Plaintiff's assignors were depositors of the Madison Square Bank, which was closed on the ninth day of August, 1893, by the bank examiner.    They made the deposits involved in this action on the seventh and eighth days of August, at which time the bank was hopelessly insolvent, and this action is brought to recover the amount of such deposits from the president and two of the directors of the bank, one of whom was the defendant Uhlmann.    The complaint was framed and the action tried upon the theory that this defendant was guilty of a fraud by which the plaintiff's assignors were damaged in that, with actual knowledge of the bank's insolvent condition, he, together with the president and another director by the name of McDonald, was instrumental in keeping the bank open and receiving deposits of all who came to it, including plaintiff's assignors.    The claim was not that there was direct, open misrepresentation by the defendant, but rather that his fraud consisted in a suppression of the truth as to the insolvent condition of the bank, and at the same time participation in the direction, which kept the bank open for the receipt of deposits after he was possessed with full knowledge of its insolvency.    His liability, therefore, was predicated solely upon fraud, and the plaintiff attempted to show the entire history of the financial condition of the bank from immediately previous to the 7th day of August, 1893, down to and including the time when it came into the possession of the bank examiner; and he claimed that the facts proved required a finding by the jury that the defendant Uhlmann had knowledge of the real condition of the bank on the seventh and eighth of August.    The contention of the defendant was that the result of an examination made by him

showed that the bank had more than sufficient property to pay
its depositors in full, and he marshalled such facts and circum-
stances as he could to support his contention that he was act-
ing in good faith and without knowledge of the insolvency of
the bank.   This was one of the issues, indeed the leading one,
and the defendant sought to put before the jury his belief
touching the responsibility of the bank up to Tuesday night,
August eighth, his claim being that his belief constituted an
important element which the jury should weigh.   The follow-
ing question was asked :

" Q. Now, Mr. Uhlmann, what was your belief up to Tues-
day night with regard to the surplus that the bank had for
the purpose of paying its liabilities ?

" Same objection.  Objection sustained.  Defendant excepts.

" Q. From whom did you receive information with regard
to the condition of the bank up to Tuesday night ?   A. From
Mr. Blaut, the president; Mr. Thompson, the cashier; from
Mr. McDonald, a director ; from inquiry in the books of the
commercial agency, and from inquiry at banking houses as to
the value of securities.

" Q. Now, as a result of that information, what was your
belief as to the financial condition of the bank up to Tuesday
evening."

" Objected to ; objection sustained and exception."

Evidence was also given on the part of the defendant tend-
ing to show that the defendant advised that deposits on the
seventh and eighth of August should not be mingled with the
funds of the bank, owing to some suspicious circumstances
that made an investigation of the bank's affairs necessary, but
that the moneys of depositors should be kept by themselves
until an investigation should disclose the real condition of the
bank.   It seems to be pretty conclusively established that such
a conversation took place, and that for some part of Monday,
the seventh, that course was taken with the moneys received
from depositors ; some time after noon of that day, however,
the president, having had a talk with the head of the force of
bank examiners, said that he proposed to telephone to the

cashier to take the deposits according to the usual course of business, and to that course this defendant testifies he protested in vigorous language. That course was adopted, however, but under such circumstances as leads plaintiff to insist that such deposits were thereafter taken with knowledge on the part of this defendant that deposits were being received. Still the defendant insisted under oath that he did not know it, and the court was asked to permit him to declare on oath his belief on that subject for the consideration of the jury.

"Q. What was your belief as to the taking of deposits on Monday up to the meeting of the bank Monday evening?

"Objected to as incompetent, immaterial and irrelevant, and calling for the mental operation of the witness. Objection sustained. Defendant excepts.

"Q. Did you believe on Monday, up to your visit to the bank Monday evening, that the instruction which Mr. Putney or Mr. McDonald had given on Saturday evening with respect to taking deposits was being carried out?

"Same objection. Same ruling. Defendant excepts. ·

"Q. Did you have any belief that deposits were being taken on Monday up to Monday evening?

"Same objection. Same ruling. Defendant excepts.'

It is, of course, the general rule that the operation of the mind of a witness may not be given, but there are exceptions to the rule and among them is a case where the character of the act depends on the intent with which the act is done, or, in other words, upon the operation of the doer's mind, and in such case his belief touching certain conditions which should influence him is material. A party's testimony as to his belief may have much or little value with the jury, but he is always entitled to have it considered where, as in this case, his liability is predicated upon the claim that with knowledge of the truth he suppressed it under circumstances calling upon him to speak with the result of injury to another. If it were a fact that, after having made such an investigation of the affairs of the bank as a reasonable and prudent man would make under the circumstances with which he was surrounded,

he believed as a result thereof that the bank was solvent, then the action should not have gone against him for he acted justly and properly according to his belief and, therefore, not fraudulently. But the plaintiff says that there was abundant evidence from which the jury could find that his knowledge was such that he could not, and did not, entertain any such belief. That may well be so, but the fact remains that his belief was a fact of the first importance in the case, and he was entitled to testify as to what it was, not because his testimony would be controlling, for it would not, but because he was entitled to have it weighed by the jury with the other testimony in determining what the fact was.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Bartlett, Martin, Cullen and Werner, JJ., concur; Gray and Vann, JJ., dissent.

Judgment reversed, etc.