## HUGHES v. MARTIN.

.No. 10098—Opinion Filed March 29, 1921.

(Syllabus.)

**1. Pleading — Construction on Demurrer — Exhibits.**

The allegations of a pleading challenged by general demurrer must be construed in connection with the exhibits attached thereto.

**2. Same—Sufficiency of Petition.**

On a demurrer to a petition as defective, in that it does not state facts sufficient to constitute a cause of action, the petition must be liberally construed, and all its allegations taken as true for the purpose of the demurrer.

**3. Same.**

A demurrer to a petition because not stating facts sufficient to constitute a cause of action can be sustained only where the petition contains defects so substantial and fatal as to authorize the court to say that, taking all the facts to be admitted, they furnish no cause of action; and if the facts stated therein entitled plaintiff to any relief, a demurrer for want of sufficient facts should be overruled.

**4. Banks and Banking—Insolvency of Bank —Action by Depositor Against Officer for Misrepresentation — Sufficiency of Petition.**

Record examined, and held, that the trial court erred in sustaining the demurrer of the defendant to the petition of the plaintiff, and the judgment is reversed and cause remanded, with directions.

Error from District Court, Grady County; Will Linn, Judge.

Action by Robert Hughes against Lawrence Martin for loss of bank deposits resulting from failure of bank. Judgment for defendant on demurrer to petition, and plaintiff brings error. Reversed and remanded.

F. E. Riddle and Harry Hammerly, for plaintiff in error.

R. D. Welborne, for defendant in error.

JOHNSON, J. This is an appeal from the district court of Grady county; Hon. Will Linn, Judge.

This proceeding in error was regularly commenced in this court by the plaintiff in error, who was the plaintiff below, filing a regularly certified transcript of the record, .the appeal being from the judgment of the trial court sustaining a demurrer interposed by the defendant to the amended petition of the plaintiff. The parties occupy the same position in this court as that occupied by them, respectively, in the trial court.

The amended petition, omitting the formal parts, is as follows:

"(1) For cause of action, plaintiff states that during the years 1910, 1911, 1912, 1913, and 1914, he was doing business with the Farmers & Merchants Bank of Mountain View, Oklahoma. That said bank was a state institution organized under the state laws and capitalized at $15,000.00. That the defendant, Lawrence Martin, was a large stockholder and an officer in said bank.

"(2) That said plaintiff, during said years, was engaged in buying and selling stock and farming, and accumulated from time to time funds to the amount of a little over $5,000.00, and from time to time, during said years, deposited the same in said bank for which time certificate was issued to him by the officers of said bank from time to time, up to and including the date of January 20, 1915, when time certificate No. 12803 was issued to him in the sum of $5,000.00 by R. C. Morris, cashier of said bank, and on the same date another time certificate for the sum of $602.05, No. 12803, was issued by R. C. Morris, cashier of said bank; copies of each of said certificates being hereto attached, marked Exhibits 'A' and 'B', respectively, and made a part of this amended petition.

"(3) Plaintiff avers that during the latter part of the year 1914 or the first part of the year 1915, there was a rumor that said bank was in a failing condition, but at said time as to the truth of said rumor plaintiff had no knowledge. That plaintiff had been doing business with said bank several years and up to said time had full confidence and faith in said bank and in its officers, and at first paid no attention to said rumor, not believing the same to be true. But having heard said rumor repeated a little while before the 20th day of January, 1915, after thinking the matter over, plaintiff concluded that he would withdraw his money from said bank.

"(4) Plaintiff states that on or about the 19th day of January, 1915, he went to said bank with the express purpose of withdrawing his money from said bank and found the defendant, Lawrence Martin, in charge of said bank at said time. That he stated to the said Lawrence Martin that it was his intention to withdraw his money from said bank, which he intended to do. That said Lawrence Martin, in response to said statement by plaintiff, requested said plaintiff to permit his said money to remain on deposit in said bank, stating that he, Lawrence Martin, had control of said bank, had the controlling interest therein, was then the president of the same, and that he was the owner of a large amount of property consisting of the street railway line in Chickasha, Oklahoma, and various business properties, and was worth at least the sum of $100,000.00. The said Martin further stated to said plaintiff that if he would permit said money to

remain on deposit, that he, Martin, would be personally responsible for the same and could protect said plaintiff herein against any loss and would personally guarantee the payment of said amount to the said plaintiff at any time he might call for his said deposit after the expiration of said certificates, copies of which are attached hereto, and made a part hereof.

"(5) Plaintiff avers that he was not familiar or acquainted with the facts and circumstances surrounding the financial condition of said bank other than the rumors which he had heard as to its condition, but which facts the said Lawrence Martin well knew. That the defendant made said statements to plaintiff for the purpose of inducing plaintiff to permit said money to remain in said bank, and that said statements were made for the purpose of causing the said plaintiff to rely upon the same. That plaintiff did rely upon said statements and, relying thereon, was induced to and did refrain from drawing said money out of said bank and permitted the same to remain on deposit, and so relying upon said statements of the said defendant and upon the ability of the said Lawrence Martin to protect plaintiff and upon his statement that he would protect and guarantee the payment of said certificates of deposit on the amounts represented by same, agreed to and did accept said certificates of deposit, copies of which are attached to this petition, and permitted his said money to remain in said bank.

"(6) Plaintiff avers that had the said Martin not made said representations and statements and guaranteed the payment of said money to this plaintiff, plaintiff would have withdrawn his said money from said bank as he intended to do and attempted to do at said time.

"(7) Plaintiff further avers that said bank at said time was insolvent, which was unknown to this plaintiff, but which fact was known to the said defendant, Lawrence Martin. Notwithstanding the said Lawrence Martin represented to this plaintiff that said bank was solvent and that on account of the said Lawrence Martin having charge of and control of said bank, it was in good condition.

"(8) Plaintiff avers that thereafter, on or about the — day of March, 1915, the banking department, with full authority under the law, took control and possession of said bank for the purpose of liquidation, and finally closed up its affairs as directed by the law and regulations of the Bank Commissioner.

"(9) Plaintiff further avers that long prior to the closing of said bank and sometime during the year 1913, the said banking commissioner, as he was authorized to do under the law, promulgated certain rules and regulations regulating the amount of interest which should be paid upon deposits, and fixed a limit as to the maximum rate. That

under said rules it was provided that no state bank should pay a larger rate of interest than four per cent. upon time deposits in any state bank.

"(10) Plaintiff further avers that when his money was first deposited in said bank and he received time certificate of deposit for the same, said bank agreed to and did pay him at the rate of four per cent. interest thereon. That in order to induce plaintiff to keep said money on time deposit and receive time certificates therefor, said bank from time to time increased the rate of said interest and agreed to pay a larger rate until in January, 1915, when the certificates of deposit were issued by said bank to this plaintiff, copies of which are attached hereto, said bank agreed to pay this plaintiff at the rate of eight per cent. per annum for the use of said money.

"(11) Plaintiff avers that it was provided by an act of the Legislature, contained in the Session Laws, 1913, page —, that deposits in any state bank upon which a larger rate of interest than should be prescribed by the Bank Commissioner was paid, that such deposits should not be paid out of the 'depositors' guaranty fund.' That by reason of said act of the Legislature, and the regulations of the Bank Commissioner fixing the four per cent. maximum rate to be paid upon deposits, and by reason of the fact that said bank agreed to pay to said plaintiff herein a larger rate than four per cent. upon said deposit, said banking department has refused to pay plaintiff any part of said amounts on deposit in said bank as shown by said certificates other than to permit him to participate with the other depositors and creditors and receive his pro rata share of the amount of the assets of said bank, and has refused to pay him any sum out of the guaranty fund of said bank. That the amount received by this plaintiff from the Bank Commissioner and the banking board was the sum of $1,015.84, which amount defendant is entitled to a credit upon said certificates issued to plaintiff, copies of which are attached to this amended petition.

"(12) Plaintiff further avers that he had no actual knowledge of the act of the Legislature hereinbefore referred to; neither did he have any knowledge of the rules and regulations promulgated by the banking department, and did not know that said bank was acting contrary to the provisions of the law and the rules and regulations of the banking department in paying him eight per cent. on said deposits, but was ignorant as to said matters, although the defendant herein, Lawrence Martin, and the cashier of said bank well knew at said time that they were violating the statute in such cases made and provided, and the rules and regulations of the Bank Commissioner promulgated in pursuance to said statute and the law. That plaintiff made demand on both the defendant and said bank, of which he was president, for the payment of said money, which was refused.

"(13) Plaintiff further avers that the said Lawrence Martin owning the controlling interest in said bank and being the largest stockholder therein and having charge and control of said bank, it was to be his personal benefit and advantage, personally, as well as officially, for plaintiff to permit said money to remain on time deposit, as hereinbefore set out, and that the said Lawrence Martin knew at the time of the issuance of said certificates and at the time he requested the plaintiff herein to permit said money to remain on deposit, that it would be of substantial benefit to him for plaintiff to permit said money to remain on deposit. That he believed at said time that by so doing it would permit him to withstand the financial crisis facing him and that he could tide said bank over and prevent a failure, realizing that a failure of said bank would injure his individual credit and standing.

"(14) Plaintiff avers that by reason of the fact that he was induced to permit his said money to remain in said bank and accept the time certificates of deposit, as herein alleged, upon the representations and statement made to him by the defendant, Lawrence Martin, as herein alleged, and by reason of the personal benefit derived by defendant by plaintiff permitting his said money to remain on deposit in said bank, and by reason of the promise of the said defendant, Martin, to guarantee the payment of said money to plaintiff, as herein alleged, the said defendant has become personally liable and indebted to said plaintiff for the amount of said deposit, to wit, $5,602.05, together with interest thereon at the rate of six per cent. per annum until paid, less the amount of credit of $1,015.84, as herein alleged. That no part of same has been paid other than the amount herein set out.

"Wherefore, plaintiff prays that the defendant be cited to appear and answer herein and on final hearing he have judgment against said defendant for the amount of $4,586.21, with interest thereon at the rate of six per cent. per annum until paid, together with all costs of suit; and prays for such other relief, general and special, to which he may be entitled in law and equity."

The demurrer filed was, in effect, a general demurrer, though running separately by number to each paragraph of the plaintiff's amended petition.

Plaintiff's three specifications of error are as follows:

"(1) That the district court erred in sustaining the demurrer to the first amended petition of said plaintiff in error.

"(2) That the district court erred in rendering judgment against said plaintiff in error and dismissing the cause of action and petition in said cause.

"(3) That said district court erred in not overruling said demurrer."

Concerning which counsel for plaintiff in error say in their brief:

"The question arises under the admitted allegations of fact under the law, is defendant liable to the plaintiff? It is the contention of the plaintiff: (1) That the statute in force at the time of the transaction complained of made the defendant liable to the plaintiff for the damage which he suffered; and, (2) that under the admitted facts and under the general law upon the subject, the defendant would be liable to the plaintiff; (3) that it being alleged that it was to the personal advantage of the defendant that plaintiff accept the time certificates of deposit and he relied upon the representations of the defendant and the defendant personally agreeing to protect him against loss, said defendant would be liable by virtue of contractual relations."

The plaintiff's first contention is that the defendant is liable to the plaintiff under the statutes of this state, and that the allegations of the petition sufficiently charge such liability.

Rev. Laws 1910, sec. 262, among other things, provides that:

"The affairs and business of any banking association organized under the laws of this state shall be managed or controlled by a board of directors, * * * who shall be selected from the stockholders. * * * No person shall be eligible to serve as a director of any bank * * * unless he shall be a bona fide owner of $500.00 of the stock of such bank. *. * * Any director, officer, or other person who shall participate in any violation of the laws of this state relative to banks and banking, shall be liable for all damages which the said bank, its stockholders, depositors or creditors shall sustain in consequence of such violation. The board shall select from among their number, the president and secretary, and shall select from among their stockholders, a cashier."

Section 271:

"No bank shall accept or receive on deposit, with or without interest, any money, bank bills or notes, or United States treasury notes, gold or silver certificates, or currency, or other notes, bills, checks or drafts, when such bank is insolvent; and any officer, director, cashier, manager, member, party or managing party of any bank who shall knowingly violate the provisions of this section, or be accessory to or permit or connive at the receiving or accepting of any such deposit, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine not exceeding five thousand dollars, or by imprisonment in the penitentiary not exceeding five years, or by both such fine and imprisonment."

Are these provisions of the statute broad enough to cover the transaction alleged in the petition, the truth of which is admitted by demurrer? We think the foregoing question must be answered in the affirmative.

When a depositor is in the act of drawing his funds from a bank, but he is induced by false representations of an official of the bank to permit such deposits to remain in the bank and to accept time certificates of deposits therefor, it is equivalent to such bank receiving on deposit such money. The provisions of the statutes further provide that any official, director, manager, member, party, or managing party of any bank, who shall knowingly violate any provisions of this statute or be accessory to or permit or connive at the receiving or accepting of any such deposit, shall be guilty of a felony. If would seem that it is too clear for argument that the defendant, under the admitted allegations of the petition, violated both the spirit and the letter of the provision of the statute quoted. If this deduction is well made, and we feel that no doubt can exist, then section 262 of the Revised Laws quoted certainly makes such officer personally liable for the damage sustained, because this section makes any director, officer, or other person, who shall participate in any violation of the law of the state relative to banks and banking, liable for all damages which the said depositor shall sustain in consequence of such violation. Had the defendant not misrepresented the condition of the bank, the plaintiff would have withdrawn his money; that is, provided the bank had sufficient to pay it.

Had the defendant not represented that the bank was solvent when he knew at the time that the bank was insolvent, the plaintiff would have sustained no damages; but he relied upon the representations made and, as a consequence thereof, permitted his money to remain in the bank and accepted certificates of deposit from the bank as evidence of the indebtedness.

On account of the misrepresentation and the defendant inducing the plaintiff to permit his money to remain on deposit, the defendant violated the provisions of the statutes. As a result of this violation, the plaintiff lost his money and the defendant became liable therefor. Such, we think, is reasonably deducible from the allegations of the petition.

The second contention of the plaintiff is that the allegations in the petition are sufficient to charge the defendant with liability for fraud, independent of the statute, supra.

3 R. C. L., sec. 99, p. 469, states the rule applicable as follows:

"Aside from constitutional or statutory provisions, the directors or officers of an incorporated bank are not individually responsible, in an action at law, for injury resulting to a creditor or depositor, unless the injury was occasioned by the malicious or fraudulent·act of the person complained of. Mere nonfeasance will not answer; nothing short of action participancy in a positively wrongful act intentionally and directly operating to the prejudice of the person complaining will give origin to individual liability"— citing 3 L. R. A. (N. S.) 483, and notes.

And again, in the latter part of the section, on page 470:

"If the directors do an illegal act, or omit to·do that which the law requires by which the rights of others are prejudiced, the law declares such conduct fraudulent, and if the circumstances are such as to warrant the imputation of the motives of probable gain to themselves by such conduct, great strength is added to the charge. * * * The general rule that an agent is personally liable for acts of misfeasance and cannot relieve himself from liability by showing that the wrong was done while acting as an officer or agent of the corporation, applies fully to the officers and agents of banks"—citing Bartholomew v. Beitley, 15 Ohio, 659, 45 Am. Dec. 596 See, also, United Society of Shakers v. Underwood, 9 Bush (Ky.) 609, 15 Am. Dec. 731.

Again, in section 100, p. 471, it is said:

"It is now settled that the directors of a bank are personally liable at the suit of a depositor for damages sustained by reason of the insolvency of a corporation when the depositor is induced to place money in the bank solely by false representations of solvency made to the general public by the directors, who ought to have known, and by the use of ordinary care, such as it was their duty to have exercised, might have known, that such represenations were false. * * * The liability of the directors has been held to extend not only to depositors, but also to persons who purchase stock in the bank on account of the false representation or report. * * * And if the directors of an insolvent bank make false and fraudulent statements as to its condition, in order to conceal its insolvency, and thereby induce a depositor not only to make new deposits, but also to permit a part of the funds already deposited to remain, they are liable in case of loss for all of the deposits, both new and old"—citing Tate v. Bates, 118 N. C. 287, 24 S. E. 482, 54 Am. St. Rep. 719:

"But where a depositor brings an action of deceit and it appears that he was a depositor at the time of the publication of the statement complained of, he must allege not only that he was induced by such statement to remain a depositor, but also that but for the statement, he would have withdrawn his deposit before the failure of the bank."

In section 101, 3 R. C. L., it is said:

"For the purpose of fixing liability on directors for false representation it has been considered immaterial whether the false representation or report was made with the intent to defraud, or whether they had knowledge of its falsity, if they should, in the performance of their duties, have had such knowledge"—citing Gerner v. Mosher, 58 Neb. 135, 78 N. W. 384, 46 L. R. A. 244.

Again, in section 102, p. 473:

"The liability of directors to depositors who are defrauded through their misrepresensation of the financial condition of the bank is one directly to the depositor, and he may sue therefor as an individual"—citing Tate v. Bates, supra.

And the rule applies whether the person suing was induced to make a deposit or to purchase stock.

Also see section 103, p. 474. After stating the general rule at common law to the effect that merely the receipt of a deposit by the official of an insolvent bank did not make the official personally liable, then the text further states:

"In some jurisdictions, statutes have made it a criminal offense for the officers of a bank to receive deposits after they have knowledge of the fact that the bank is insolvent, and it has been said that a bank officer who receives a deposit in violation of the statute is personally liable to the depositor for all damages proximately resulting. Other statutes expressly provide that the officer shall be personally liable for the deposits so received"—Hyland v. Roe, 111 Wis. 361, 87 N. W. 252. See, also, Cassidy v. Uhlmann, 163 N. Y. 380, 57 N. E. 620.

So it will be seen from the last quotation that where the statute makes it a·criminal offense, under the general rule, the official of the bank guilty of a misrepresentation would be liable for the damages resulting, although the statute did not so expressly provide. Our statutes make it a criminal offense and also expressly provide that the official of a bank violating the law, or in any way participating in its violation, is personally liable for the resulting damage.

In St. Louis &- San Francisco Railway Co. v. Walter S. Johnston, reported in 133 U. S., p. 566, 33 L. Ed., p. 683, Mr. Chief Justice Fuller, speaking for the court, in the body of the opinion (page 576), stated:

"This bank was hopelessly insolvent when the deposit was made, made so apparently by the operation of a firm of which the president of the bank was a member. The knowledge of the president was the knowledge of the bank. Martin v. Webb, 110 U. S. 7, 80 L. Ed. 49; Manhattan Bank v. Walker, 130 U. S. 267; Cragie v. Hadley, 99 N. Y. 131. In the latter case it was held that the

acceptance of a deposit by a bank, irretrievably insolvent, constituted such a fraud as entitled the depositor to reclaim his drafts or their proceeds."

There can be no question but that the president of the bank must have actually known, and legally must be charged with knowledge, that this bank was absolutely insolvent, because it was in the hands of the Bank Commissioner within about 60 days after the certificates were issued to the plaintiff.

Again, the Chief Justice proceeds in the opinion, supra, on page 577:

"The bill alleged that the bank was insolvent on the 5th day of May; that this was well known to its officers; that it wrongfully neglected to disclose its insolvency to complainant, and, by continuing business and otherwise, represented to complainant and all other persons dealing with it that it was solvent; that complainant, on the faith of these representations, believed such to be the fact, without suspicion that the bank was, or was in danger of becoming, insolvent; that, acting upon the representations, and relying on the bank's solvency, complainant delivered the draft; that next morning the bank closed its doors, and the draft was collected thereafter; and that, by reason of the premises, the draft, or its proceeds, did not become the property of the bank. * * * The fraudulent intention flowed from the guilty knowledge, and the bank must be held to the consequences of a representation which it knew to be contrary to the fact, and upon which the plaintiff innocently acted. * * * As a matter of pleading, the averment was that the bank wrongfully neglected to make the disclosure; as a matter of fact, the condition of the bank was so hopeless that it was its duty to make it. The omission to specifically state in the pleading the degree of insolvency which rendered the bank's conduct fraudulent, was not fatal, as the conclusion asserted showed the intention of the pleader, and the particular contention could fairly be tested on the hearing."

While we do not regard the petition as being a model, yet we think that the allegations thereof, when construed with the exhibits thereto attached, were sufficient to withstand the demurrer.

The rule announced by this court is as follows:

"The allegations of a pleading challenged by general demurrer must be construed in connection with the exhibits attached thereto." Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681.

In Jackson et al. v. Moore et al., 79 Okla. 59, 191 Pac. 590, it was said:

"On a demurrer to a petition as defective, in that it does not state facts sufficient to constitute a cause of action, the petition must be liberally construed, and all its allegations taken as true for the purpose of the demurrer."

"A demurrer to a petition because not stating facts sufficient to constitute a cause of action can be sustained only where the petition contains defects so substantial and fatal as to authorize the court to say that, taking all the facts to be admitted, they furnish no cause of action, and if the facts stated therein entitled plaintiff to any relief, a demurrer for want of sufficient facts should be overruled."

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded with directions to overrule the demurrer.

PITCHFORD, V. C. J., and McNEILL, ELTING, and NICHOLSON, JJ., concur.